# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

FRANKLIN WOODS,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 1:20-cv-618 |
| - vs - | | | District Judge Timothy S. Black |
| | | | Magistrate Judge Michael R. Merz |

WARDEN, Warren Correctional
 Institution

|  |  |
|---|---|
| | : |
| Respondent. | |

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Franklin Woods under 28 U.S.C. §
2254, is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No.
1), the State Court Record (ECF No. 7), the Warden's Return of Writ (ECF No. 8), and Petitioner's
Reply (ECF No. 9).

The Magistrate Judge reference in the case was recently transferred to the undersigned to
help balance the Magistrate Judge workload in the District. Final decision of the case remains
with District Judge Timothy Black.

**Litigation History**

This case arises out of two cases in the Common Pleas Court of Lawrence County, Ohio.
On December 16, 2015, Woods waived indictment and pleaded not guilty to an information

1

charging him with one third-degree felony count of gross sexual imposition in violation of Ohio Revised Code § 2907.05(A)(4)(Lawrence County Case No. 15-CR-301)(Waiver of Indictment, State Court Record, ECF No. 7, Ex. 1).

On February 24, 2016, a Lawrence County, Ohio, grand jury indicted Woods on four fourth-degree felony gross sexual imposition counts in violation of Ohio Revised Code § 2907.05(A)(1); four third-degree felony gross sexual imposition counts in violation of Ohio Revised Code § 2907.05(A)(4); four first-degree felony rape counts in violation of Ohio Revised Code § 2907.02(A)(2); two first-degree felony rape counts in violation of Ohio Revised Code § 2907.02(A)(1)(b); three second-degree felony sexual battery counts in violation of Ohio Revised Code § 2907.03(A)(5); and one third-degree felony sexual battery count in violation of Ohio Revised Code § 2907.03(A)(5)(Lawrence County Case No. 16-CR-33)(Indictment, State Court Record, ECF No. 7, Ex. 14).

After the trial judge denied Woods' motion to suppress, the cases were tried jointly to a jury in November, 2016, which found Woods guilty of one first-degree felony rape charge and four third-degree felony gross sexual imposition charges, but not guilty of the other indicted charges. He was sentenced to an aggregate term of 32.5 years to life imprisonment.

Woods appealed to the Ohio Court of Appeals for the Fourth District which affirmed the convictions. *State v. Woods*, 2018-Ohio-4588 (Ohio App. 4th Dist. Nov. 7, 2018), appellate jurisdiction declined, 2019-Ohio-3731 (2019). He then timely filed his petition in this Court, raising the following grounds for relief:

> **GROUND ONE**: Two step interrogation prohibited by the Supreme Court in *Missouri v. Seibert*.
>
> **GROUND TWO:** The trial court erred when it denied "Petitioner Woods" motion to suppress when Deputy Chaffins failed to "scrupulously honor" Woods' assertion of his right to remain silent.

**GROUND THREE:** Trial court findings regarding statements obtained by Amber Stamper are factually inaccurate and not supported by the record.

**GROUND FOUR**: Randy Thompson and Amber Stamper should be considered agents of law enforcement.

**GROUND FIVE:** Woods' convictions were based on insufficient evidence and against the manifest weight of the evidence.

(Petition, ECF No. 1).

# Analysis

**Ground One: Improper Interrogation Techniques**

**Ground Two: Error in Denial of Motion to Suppress**

**Ground Three: Inaccurate Factual Findings Regarding Statements Taken By Amber Stamper**

**Ground Four: Randy Thompson and Amber Stamper Should Be Considered Law Enforcement Agents**

In his First Ground for Relief, Woods claims he was subjected to the method of interrogation which the Supreme Court declared unconstitutional in *Missouri v. Seibert*, 542 U.S. 600, 609 (2004). In his Second Ground he asserts his motion to suppress should have been granted because his right to remain silent was not properly honored by Deputy Sheriff Chaffins. His Third Ground challenges the accuracy findings regarding his statements taken by Amber Stamper. And in his Fourth Ground he claims Amber Stamper and Randy Thompson should be treated as law enforcement agents for purposes of enforcing his Fifth Amendment rights.

3

Respondent defends these claims on the merits, asserting that the Fourth District's decision of them is not an unreasonable application of clearly established Supreme Court precedent (Return, ECF No. 8, PageID 1433, et seq.). In his Response, Woods asserts that his children had already been removed from his home when he was first interviewed (ECF No. 9, PageID 1463-64). He asserts he was under the influence of alcohol, marijuana, and mood stabilizers during the interviews. *Id.* at PageID 1464-66. He also asserts Chaffins and Thompson together used questioning which failed to respect his right to remain silent. *Id.*

The relevant portions of the Fourth District's decision are as follows:

> [*P34] In his first and second assignments of error Woods asserts that the trial court erred in denying his motion to suppress statements he made to social worker supervisor Thompson and Deputy Sheriff Chaffins. Appellate review of a trial court's decision on a motion to suppress raises a mixed question of law and fact. *State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, 975 N.E.2d 965, ¶ 6. Because the trial court acts as the trier of fact in suppression hearings and is in the best position to resolve factual issues and evaluate the credibility of witnesses, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Accepting these facts as true, we must then "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Hobbs* at ¶ 8, citing *Burnside* at ¶ 8.

> **2. Two-Step Interrogation Technique**

> [*P35] First Woods asserts that the trial court erred in denying his motion to suppress because his statements to Thompson and Deputy Sheriff Chaffins were inadmissible as part of the two-step interrogation technique prohibited by the United States Supreme Court in *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). The plurality in *Seibert* held that a "midstream recitation of [Miranda] warnings after interrogation and unwarned confession" does not "comply with Miranda's constitutional requirement." *Id.* at 604. In that case a police officer intentionally questioned a defendant at a police station following her arrest without providing Miranda warnings. During this questioning the

4

defendant made incriminating statements. The officer then gave the defendant a 20-minute break. After the break the same officer gave the defendant Miranda warnings, obtained a signed waiver, and resumed questioning. During this second round of questioning the officer confronted the defendant with the prewarning statements. The defendant repeated her incriminating statements.

[*P36]  The court referred to the police officer's "midstream" warning as a specifically designed police strategy of "question-first." *Id*. at 609-611. The court determined that "[t]he object of question-first is to render *Miranda* warnings ineffective by waiting for a particularly opportune time to give them, after the suspect has already confessed." *Id*. at 611. After an objective determination from the perspective of the suspect about whether Miranda warnings delivered midstream could be effective enough to accomplish their purpose, the plurality held that the defendant's postwarning statements were inadmissible. Id. at 615-616. The Supreme Court of Ohio applied Seibert in *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985.

[*P37]  But before we apply Seibert, we must first decide whether Woods made his prewarning statement to Thompson in the context of a custodial interrogation by a law enforcement officer or agent. If Woods was not subjected to custodial interrogation, *Miranda* warnings were not necessary, making Seibert and Farris inapplicable. See *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 105-106.

[*P38]  In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court established procedural safeguards for securing the constitutional privilege against self-incrimination. Id. To protect this right the court held "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444.

[*P39]  The key issue in this case is whether Woods was in custody when Thompson questioned him.  Custodial interrogation is that "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444; *City of Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, 92 N.E.3d 810, ¶ 9. "'Custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion."

*Howes v. Fields,* 565 U.S. 499, 508-509, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012). In determining whether a person is in custody, courts must examine all the circumstances surrounding the interrogation to ascertain whether a reasonable person would have felt at liberty to terminate the interrogation and leave. Id. "The ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). "The relevant inquiry in determining whether a person is subject to custodial interrogation focuses upon how a reasonable person in the suspect's position would have understood the situation[;] [t]he subjective views of the interviewing officer and the suspect do not control whether a custodial interrogation occurred." *State v. Fouts,* 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, ¶ 19.

[*P40]  Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning. See *Howes,* 565 U.S. at 509; *State v. Edmond,* 10th Dist. Franklin No. 15AP-574, 2016-Ohio-1034, ¶ 12.

[*P41]  The trial court refused to suppress Woods's statement to Thompson, finding it was not the product of custodial interrogation. The trial court relied upon the following facts: (1) Woods had returned a phone call to the social worker, Stamper; (2) he voluntarily came to the social worker's office building; (3) there were no locked doors preventing Woods from leaving at any time he wished to; and (4) he was never told he was not free to leave.

[*P42]  Woods asserts that the trial court's factual finding that he came to the department of job and family services building voluntarily was not supported by the evidence because he only appeared after Stamper told him that he would need to sign a safety plan before M.W. could return to him. But he cites no testimony or other evidence from the suppression hearing establishing that Stamper threatened him with permanent removal of his daughter and other children if he failed to come in to sign the safety plan. In fact his daughter had already left his home through placement with his fiancée's mother when Stamper talked to him. And Woods told Thompson that he wanted his children to be placed there at least temporarily. The trial court's findings were supported by the evidence at the suppression hearing.

6

[*P43] The relevant circumstances include: (1) Thompson's interrogation occurred at a county department of job and family services office building rather than a police station; (2) Woods voluntarily came to the building at the social worker's request; (3) the interrogation was brief—lasting only about 25 minutes; (4) Woods indicated a willingness to talk freely about his daughter's allegations of sexual abuse because he did not want to drag his daughter through a trial and he was remorseful and ashamed about what he had done to her; (5) he was not physically restrained during the interrogation and he was free to leave at any time during it or during the 45-minute break before Deputy Sheriff Chaffins arrived; and (6) Thompson expressly told him during the interview that they did not "have to do" the interview.

[*P44] Moreover, when he interrogated Woods, Thompson was not acting in his capacity as a police officer or an agent of the police. The trial court concluded that although Thompson was also a part-time village police officer, he had no police powers outside the village, and there was no evidence that Woods had any knowledge that Thompson was also a police officer. The trial court's findings were supported by Thompson's testimony at the suppression hearing, as well as his statement to Woods during the interview, that neither he nor Stamper were police officers. Although counsel speculates that Woods could have known Thompson to be a police officer because of where he lived, there is nothing in the suppression hearing that supports this speculation. Consequently, a reasonable person in Woods's position would not have believed that Thompson, who was acting as a social worker supervisor, and was not dressed in a police uniform with a badge or gun, was a police officer.

[*P45] Although Miranda's requirements clearly apply to persons acting as agents of law enforcement, see *State v. Phillips*, 4th Dist. Highland No. 11CA11, 2011-Ohio-6773 ¶ 9, we are not persuaded that Thompson and Stamper acted in that capacity while interviewing Woods. Children's services agencies like the Lawrence County Department of Job & Family Services have a statutory duty to investigate any complaint concerning child abuse. Their investigators and employees are required to attempt to interview alleged perpetrators in child abuse cases and to report all known and suspected child abuse to law enforcement. *State v. Kessler,* 12th Dist. Fayette No. CA2005-12-037, 2007-Ohio-1225, ¶ 19, citing R.C. 5153.16(A).

[*P46] Ohio courts have consistently held that in general, children services case workers and employees are not considered law enforcement officers and consequently have no duty to advise

suspects of their *Miranda* rights. Id.; State v. Coonrod, 12th Dist. Fayette No. CA2009-08-013, 2010-Ohio-1102, ¶ 9, quoting State v. Thoman, 10th Dist. Franklin No. 04AP-787, 2005-Ohio-898, ¶ 7 ("In general, Ohio courts have held that 'social workers have no duty to provide Miranda warnings because they are private individuals without the power to arrest'"). The Supreme Court of Ohio recently adopted this general precept by holding that "[a] social worker's statutory duty to cooperate and share information with law enforcement with respect to a child abuse investigation does not render the social worker an agent of law enforcement for purposes of the Fifth and Sixth Amendments to the United States Constitution when the social worker interviews an alleged perpetrator unless other evidence demonstrates that the social worker acted at the direction or under the control of law enforcement." *State v. Jackson*, 154 Ohio St. 3d 542, 2018-Ohio-2169, 116 N.E.3d 1240, syllabus. Here, Woods relies upon Thompson's dual employment as a social worker and police officer to distinguish Jackson.

 [*P47]  Under limited circumstances appellate courts have upheld trial court determinations that a social worker was acting as an agent of law enforcement for purposes of custodial interrogation, thus requiring Miranda warnings. See, e.g., *State v. Brown*, 91 Ohio App.3d 427, 632 N.E.2d 970 (6th Dist.1993) (defendant was coerced and in custody during interview at department of human services where DHS social worker told the defendant that his stepdaughter would be removed from his home if he did not attend interview, a 6'5" police officer dominated and controlled the interview by moving to a position no more than a few inches away from him, the interview lasted more than an hour, which created an intimidating atmosphere in which a reasonable person would not have felt free to leave); *State v. Torres*, 67 Ohio App.3d 268, 586 N.E.2d 1153 (6th Dist.1990) (defendant was in custody for purposes of Miranda warnings when, after agreeing to interview on allegations that he had sexual contact with a minor, he was taken to a private room at the department of human services by an agency representative and an investigator for the prosecutor, who were acting as an arm of the police department in an atmosphere that was police dominated).

 [*P48]  These cases, which Woods relies upon, are easily distinguishable. There was no evidence at the suppression hearing—as in Brown—that the social worker threatened removal of the child from his home; the child had already been removed as Woods himself argued was advisable. Nor was the interrogation dominated by either a large, intimidating uniformed police officer or a prosecutor's investigator—as in Brown and Torres. And

8

significantly, the trial court here did not find a coercive, custodial atmosphere. See *State v. Walker*, 10th Dist. Franklin No. 97AP02-212, 1997 Ohio App. LEXIS 4216, 1997 WL 578946, *7 (Sept. 16, 1997) (distinguishing Brown because the trial court in that case determined that there was an in-custody, police dominated atmosphere surrounding the interview, whereas the trial court in Walker did not).

[*P49]  Notwithstanding Thompson's position with an uninvolved law enforcement agency, this is not a case in which "other evidence" demonstrates that the social workers acted at the direction or under the control of law enforcement. *Jackson* at syllabus. Instead, there is no evidence here that Thompson or Stamper acted at the direction, control, or behest of law enforcement. Under these circumstances, we agree with the trial court's conclusion that they were not agents of law enforcement so as to warrant *Miranda* warnings.

[*P50]  Because the trial court correctly held that Woods was not in custody when Thompson interrogated him, it properly rejected Woods's claim that the state had engaged in the impermissible two-step interrogation technique prohibited in *Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643, and *Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985. Unlike the defendants in those cases, Woods had not been arrested or taken into custody by police when he was initially  interrogated.

[*P51]  Finally, Woods claims that the trial court's findings regarding the statements he made to social worker Stamper were factually inaccurate and not supported by the record. The state does not deny that the trial court's findings were inaccurate, but argues that the error was harmless. The trial court erroneously found that Woods made statements admitting specific instances of sexual abuse to Stamper; he actually made these statements to Thompson. He only told Stamper he was not denying her general summary that his daughter had indicated he was inappropriately touching her.

[*P52]  Nevertheless, we agree with the state that this mistake was harmless because the trial court's suppression ruling was not dependent on when Woods made more detailed incriminating statements. The trial court's conclusion that Woods was not subjected to custodial interrogation when he spoke to Stamper and Thompson was not dependent on that fact. Therefore, we overrule Woods's first assignment of error.

### 3. Right to Remain Silent

[*P53]  In his second assignment of error Woods contends because the deputy failed to scrupulously honor his assertion of his right to remain silent, the trial court erred when it denied his motion to suppress his statement to Deputy Sheriff Chaffins. Neither party disputes that the deputy administered Miranda warnings to Woods before questioning him and Woods acknowledged that he understood them. Instead the dispute is about whether Woods clearly invoked his right to remain silent during the interrogation.

[*P54]  "Invocation of the *Miranda* right to [remain silent] 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire [to cease all questioning].'" *Davis v. United States,* 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), quoting *McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). "If the suspect's statement is not an unambiguous or unequivocal [invocation of the right to remain silent], the officers have no obligation to stop questioning him." *Davis*, 512 U.S. at 461. "'If an accused makes a statement concerning the right to [remain silent] 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wanted to invoke his or her Miranda rights.'" *State v. Lawson,* 4th Dist. Pickaway No. 14CA20, 2015-Ohio-4394, ¶ 19, quoting *Berghuis v. Thompkins,* 560 U.S. 370, 381, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010).

[*P55]  Woods asserts after being Mirandized and acknowledging his waiver, Deputy Sheriff Chaffins asked him "what's going on." Although the state's transcript of the statement listed Woods's response as partly unintelligible,  Woods claims he responded that "he had already provided a statement to Thompson, that he believed himself to be under arrest, and that he had nothing to say." Thus he contends questioning should have stopped.

[*P56]  Our own review of the audio recording of Woods's statement to the deputy reveals the following dialogue:

> Chaffins: Do you care to talk about what's going on?
>
> Woods: I said everything I needed to say already. I'm under arrest. I've already said everything. Am I under arrest?
>
> Chaffins: I'm just here to question you. That's it. I don't know what's going on. All I know is your daughter made

an allegation and children services were trying to clear that up and then I have been brought into the mix of it. I'm here to get your side of the story. I haven't talked to your daughter yet. I talked briefly to children services but not enough to get the whole story. I just wanted to see what your, a lot of times it's easier to just cut to the chase and talk to the person directly.

[*P57]  Woods then proceeded to answer additional questions from the deputy and Thompson.

[*P58]  Our review of the recording does not support Woods's claim that he told the deputy that he "had nothing to say." At best, he referenced his previous statement to Thompson by indicating that he had "already said everything." But he tied that answer to a question about whether he was under arrest.

[*P59]  Woods's statement was comparable to a "suspect expressing a desire not to elaborate on a prior answer because he had nothing else to say about it," which is not tantamount to unequivocally invoking the right to remain silent and to terminate the interview. See, e.g,, *State v. Gray*, 2017-Ohio-563, 85 N.E.3d 316, ¶ 11 (2d Dist.), and cases cited. Similarly, in *State v. Griffith*, 11th Dist. Trumbull No. 2001-T-0136, 2003-Ohio-6980, ¶ 34, the court determined that the defendant did not unambiguously invoke his right to remain silent by stating, "I'm done," because in the context of the questioning, it "could have meant that [defendant's] previous answer was complete and that he had nothing to add to that answer," but "did not clearly display [his] intention to not answer subsequent questions."

[*P60]  The record does not support Woods's claim that he unequivocally invoked his right to remain silent during his interview with Deputy Sheriff Chaffins. The deputy was not required to stop questioning him or even clarify whether he wished to continue answering questions. *Lawson*, 2015-Ohio-4394, at ¶ 33. We overrule Woods's second assignment of error.

*State v. Woods, supra*.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the

United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  The question before the habeas corpus court is not whether the application of Supreme Court precedent is correct, but whether it is unreasonable.  In other words, we do not consider the constitutional claims anew, but only whether the state court applied Supreme Court precedent unreasonably.

In this case the Fourth District Court of Appeals decided on the merits all of the first four constitutional claims Woods makes in his Petition and he has not shown that the decision is an objectively unreasonable application of the relevant Supreme Court precedent.  Grounds One, Two, Three, and Four should be dismissed on that basis.


**Ground Five:  Insufficient Evidence**


In his Fifth Ground for Relief, Woods claims his convictions are against the manifest weight of the evidence and supported by insufficient evidence.

A manifest weight of the evidence claim does not state a federal constitutional claim and is therefore not cognizable in habeas corpus.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). The manifest weight portion of Ground Five should therefore be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

An allegation that a verdict was entered upon insufficient evidence, on the other hand, does state a claim under the Due Process Clause of the Fourteenth Amendment to the United States

Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*) This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

13

>See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

>We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  The federal courts do not make credibility determinations in reviewing

sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Most recently in *Thompson v. Skipper*, 981 F.3d 476 (6th Cir., 2020), the Sixth Circuit held: "To evaluate a sufficiency-of-the-evidence claim, we consider 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324)."

The Fourth District Court of Appeals decided Woods' sufficiency of the evidence claim on the merits, writing:

> [*P61]  In his third and fourth assignments of error Woods asserts that his convictions for rape and gross sexual imposition were not supported by sufficient evidence and were against the manifest weight of the evidence.

> [*P62]  "When a court reviews the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Maxwell*, 139 Ohio St.3d 12, 9 N.E.3d 930, ¶ 146, 2014-Ohio-1019, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

> [*P63]  "A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness." *State v. Koon*, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 17. "That limited review does not intrude on the jury's role 'to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio v. United States*, __ U.S. __, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016), quoting *Jackson*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.

> [Text discussing manifest weight standard omitted.]

[\*P66]  In his third assignment of error Woods claims that his convictions for one count of rape and five counts of gross sexual imposition of a child less than 13 years of age were not supported by sufficient evidence.

[\*P67]  Woods was convicted of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree, which states: "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

[\*P68]  He was also convicted of gross sexual imposition under R.C. 2907.05(A)(4), which states: "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

[\*P69]  Woods argues that because the jury found him not guilty of the counts that were based upon two fact-specific incidents involving the kitchen and bedroom mirror, it could not convict him of the counts based upon more general factual assertions. He contends "[a]t least some specifics regarding where and when an alleged assault occurred, and what specific actions occurred that constitute an offense, are required to prove beyond a reasonable doubt that [he] is guilty of an offense."

[\*P70]  However the law is clear that testimony regarding the exact date and time of an offense is not required in these cases. That is, "[a]n allowance for reasonableness and inexactitude must be made for such cases because many child victims are unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time and the accused and the victim reside in the same household, which facilitates the extended period of abuse." See, generally, *State v. Neal*, 2016-Ohio-64, 57 N.E.3d 272, ¶ 24 (4th Dist.), citing *State v.*

16

*Adams*, 2014-Ohio-5854, 26 N.E.3d 1283, ¶ 51 (7th Dist.); see also *State v. Wright*, 2d Dist. Clark No. 99CA0011, 2000 Ohio App. LEXIS 2239, 2000 WL 679142, *5 (May 26, 2000) (rejecting appellant's argument that his convictions for gross sexual imposition were not supported by sufficient evidence because the child victim "never provided any specific dates or times when these offenses occurred"). In these cases, the state need only "establish that the offense charged occurred within a reasonable time in relation to the dates fixed in the indictment." *Neal* at ¶ 24 (stating this precept in the context of addressing an insufficient-evidence claim); *State v. McIntire*, 6th Dist. Huron No. H-13-018, 2015-Ohio-1057, ¶ 42, citing *State v. Dodson*, 12th Dist. Butler No. CA2010-08-191, 2011-Ohio-6222, ¶ 40; see also *State v. Green*, 4th Dist. Ross No. 04CA2760, 2004-Ohio-5089, ¶ 16 ("the prosecution was not required to prove the exact date of the offense because the date is not an element of the offense. However, the prosecution is required to prove beyond a reasonable doubt that the incident occurred within the time frame specified in the indictment").

[*P71] This case involved Woods's repeated sexual abuse of his minor daughter over an extended period of time while they lived in the same household. The particulars of the crimes were supported by sufficient evidence. The child victim testified that Woods touched her breasts more than ten times and touched the inside of her vagina every time he came into her bedroom before she was 13. And Woods admitted inappropriate sexual behavior with his daughter to Stamper, Thompson, and Deputy Sheriff Chaffins. He also admitted to being sexually aroused when he touched his daughter's breasts. After viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes of rape and gross sexual imposition of a child less than 13 years of age proven beyond a reasonable doubt. We overrule Woods's third assignment of error.

*State v. Woods, supra*.

As can be readily seen, the Fourth District cited the correct standard from *Jackson*, so its decision is not "contrary to" clearly established federal law. Woods says nothing about Ground Five in his Reply. Analyzing the evidence recited by the Fourth District, the victim gave direct testimony to support the charges.

The Sixth Circuit has long held that the testimony of the victim alone is constitutionally

sufficient to sustain a conviction. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008), *citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); see also *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard,* 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not remove every reasonable hypothesis except that of guilt") (internal quotation marks omitted).

The fact that the jury acquitted Woods on some of the charges where the specifics of the witness's testimony were more detailed does not undermine the verdict on the remaining counts. The jury might have doubted her ability to remember very specific details, but credited her testimony as to patterns of abuse.

The Fourth District's decision on the merits of this claim are not an objectively unreasonable application of Jackson and is therefore entitled to deference. On that basis, Ground Five should be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this

conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that

the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

be permitted to proceed *in forma pauperis*.


February 23, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #